UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FELIX SEBASTIAN OROZCO TORRES,

      Petitioner,

v.

                              Case No. 3:26-cv-646-TJC-LLL

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

      Respondents.

---

## ORDER

### I. Status

Proceeding without counsel, petitioner Felix Sebastian Orozco Torres, an immigration detainee, initiated this action by filing a Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1; Petition) and other motions seeking emergency relief on March 27, 2026. On March 31, 2026, the Court granted in part Petitioner's Emergency Motion for Temporary Restraining Order, consolidating resolution of the request for injunctive relief with an adjudication on the merits of the Petition, and ordering Respondents to expeditiously respond to the petition and show cause as to why it should not be granted. See Temporary Restraining Order (Doc. 8; TRO). The Federal Respondents timely responded and filed exhibits in support (Docs. 9 and 10). This case is ripe for review.

## II. Background

Orozco Torres, a citizen of Cuba, entered the United States at the Brownsville, Texas port of entry on November 4, 2023.  Doc. 10, Ex. 1. Orozco Torres was issued a Notice to Appear advising that he was an "arriving alien" and setting a hearing before an immigration judge on May 25, 2027.  Id.  Orozco Torres was then paroled and permitted to enter the United States while he awaited the hearing. Doc. 10, Ex. 2. On November 20, 2024, an immigration judge dismissed the pending removal proceedings because Orozco Torres was eligible for an adjustment of status under the Cuban Adjustment Act.  Doc. 10, Ex. 3.  On February 18, 2025, Orozco Torres submitted a Form I-485 seeking to register as a permanent resident or to adjust his status, for which he paid an application fee of $1,440.  Doc. 1, Ex. A.  That application remains pending, Doc. 9 at 2, and in the interim, he was deemed admitted on parole until April 18, 2025. Doc. 10, Ex. 2.  Orozco Torres represents that he has resided in the community, has complied with all applicable legal requirements, and has no criminal history.  Doc. 1 at 3.  Respondents do not contend otherwise.

In December 2025, Orozco Torres was taken into U.S. Immigration and Customs Enforcement ("ICE") custody in Orlando, Florida.  Doc. 1 at 3.  An immigration judge denied Orozco Torres's request for bond, explaining that

immigration judges "lack the authority over bond requests for aliens who are present in the United States without admission." Doc. 1, Ex. B at 3.

In his Petition, Orozco Torres argues that his Fifth Amendment due process rights are violated by his prolonged detention under 28 U.S.C. § 1225(b)(2)(A), that by denying him a prompt hearing before a neutral decision maker, he is being denied due process, and that he is being subjected to punitive conditions of confinement. Doc. 1.

### III. Analysis

The Court first addresses the Federal Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Orozco Torres's claims and that Orozco Torres failed to exhaust his administrative remedies prior to filing this case. See Doc. 9 at 5-8. Because the Court rejects those arguments, the Court then addresses the merits of Orozco Torres's claims.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the

'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Orozco Torres is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. Indeed, Orozco Torres does not have an order of removal. Instead, Orozco Torres is attacking ICE's decision to treat him as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Orozco Torres's claims.

4

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Orozco Torres does not appear to have an order of removal. Nor is he seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, he is challenging his classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of his claims.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Indeed, as noted above, the immigration judge denied Orozco Torres's request for a custody redetermination, finding that he lacked authority to hear the request for a bond based on the BIA's Hurtado decision. Doc. 1, Ex.  B at 3.  Requiring Orozco Torres to administratively appeal that decision to the BIA or make any further administrative request for a bond hearing would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1,

6

2025)[1] (collecting cases); see also Mohammed v. Olson, No. 1:25-CV-02404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025) (rejecting the respondents' argument that the petitioner must exhaust his administrative remedies by requesting a bond hearing; reasoning that "[b]ecause [the p]etitioner entered the country without inspection, if he were to move for a bond hearing, an [immigration judge] would have to decline jurisdiction over the issue" based on binding BIA precedent). Considering the circumstances, the Court rejects the Federal Respondents' exhaustion argument.

### d. Merits

The underlying premise of Orozco Torres's claim is that he should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 287, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien" or "may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)-(2) (emphasis added). The Supreme Court has recognized that this section

8

"applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and applied this policy in Hurtado, 29 I. & N. Dec. 216. But district courts around the country have largely rejected the government's new interpretation of these

9

regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at \*3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at \*6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at \*6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at \*5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by [the r]espondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at \*7 (collecting cases). But see Lopez v. Dir. of Enf't & Removal Operations, - - - F. Supp. 3d - - -, 2026 WL 261938, at \*8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at \*3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp.

10

3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous opinion, reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under § 1225(b)(2).[2] See id.  On March 25, 2026, the Eighth Circuit Court of Appeals likewise issued a published, but not unanimous opinion, agreeing with the Fifth Circuit majority's analysis in Buenrostro-Mendez.  See Avila v. Bondi, - - - F.4th - - -, 2026 WL 819258 (8th Cir. 2026).  Those decisions are not binding here. And while the undersigned respects the reasoned decisions of the majority opinions and those of his colleagues on this Court who follow this

---

[2] A circuit split is likely on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that DHS was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (argued March 26, 2026).

11

reasoning, the dissenting opinions are more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez and Avila dissents in full. See 166 F.4th at 508–21 (Douglas, J., dissenting); 2026 WL 819258 at * 6-8 (Erickson, J., dissenting). Therefore, Orozco Torres is subject to § 1226, not § 1225(b)(2), because he has continuously resided in the United States since 2023.

Nevertheless, the Federal Respondents argue that the automatic expiration of Orozco Torres's parole returned him to the status of an "arriving alien" subject to mandatory detention under § 1225(b)(2). See Doc. 9 at 10-11. In support of their argument, the Federal Respondents cite to a DHS regulation which provides that upon expiration of parole under 8 U.S.C. § 1182(d)(5)(A), a noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

The Court declines to adopt Respondents' interpretation of § 1182(d)(5)(A).

> While Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee "to the custody from which he was paroled" "district courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place." Linarez v. Stamper, No. 1:26-cv-101-JAW, 2026 WL 592294, at * 5 (D. Me. Mar. 3, 2026). Instead, "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen

12

> whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065, 2025 WL 3314420, at * 17 (E.D.N.Y. Nov. 28, 2025).

Matkarimov v. Noem, No. 26-48-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026). Finding their reasoning persuasive, this Court joins other district courts in finding that, following the expiration of parole, noncitizens like Orozco Torres do not return to the status of an "arriving alien." See, e.g., Coal. For Human Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry.'"); Wu v. Stamper, No. 1:26-CV-00090-SDN, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) (finding that "a more judicious reading of section 1182(d)(5)(A) suggests that a noncitizen whose parole has expired should be treated similarly to the 'vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.'"); Qasemi v. Francis, No. 25-cv-10029 (LJL), 2025 WL 3654098, at * 6 (S.D.N.Y. Dec. 17, 2025) ("It would try any plain understanding of the term arrival to classify an individual like [petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien."); Walizada v. Trump, No. 2:25-cv-768,

13

2025 WL 3551972, at *15 (D. Vt. Dec. 11, 2025) (finding it "unjust" and "counterintuitive" that a petitioner "who was welcomed into the United States after extensive screening, would be entitled to less statutory protection and due process rights than someone who has entered the country illegally and committed certain crimes here.").[3]

Indeed, Orozco Torres can no longer be classified as a noncitizen "who is arriving in the United States" even though he was initially detained upon his arrival in Texas on November 4, 2023. When ICE most recently detained him in Florida in December 2025—more than two years after he entered the United States—Orozco Torres was not in the process of "arriving" in the United States. It would be absurd to find that Orozco Torres is still in the process of "arriving" in the United States when he has been continuously residing here for at least eight months after the expiration of his parole.  Thus, he is not properly

---

[3] The Court notes that in Ibragimov v. Gonzales, the Second Circuit exercised deference to a provision within 8 U.S.C. § 1.1(q), the predecessor to 8 C.F.R. § 1.2, which provided that "[a]n arriving alien remains such even if paroled pursuant to [INA] section 212(d)(5) . . . ." 476 F.3d 125, 135–37 & n.17 (2d Cir. 2007) (citing Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)). The Second Circuit therefore held that a petitioner who had overstayed his visa, left, and had been paroled back into the United States was an "arriving alien" because that was his status before he was paroled and 8 C.F.R. § 1.1(q) "command[ed] that 'an arriving alien remains such even if paroled." Ibragimov, 476 F.3d at 136 (emphasis in original). Of course, that decision was before the Supreme Court issued Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024), which determined that courts must exercise independent judgment in determining the meaning of statutory provisions.

14

detained under § 1225(b)(2) as Respondents contend. Instead, his detention is governed by § 1226, and the Petition is due to be granted.

## IV. Remedy

The Court next considers the appropriate relief in this case. The Federal Respondents urge the Court to direct a bond hearing, see Doc. 9 at 17, rather than the immediate release Orozco Torres seeks, see Doc. 1 at 5, Doc. 4.  At the same time, the Federal Respondents assert that "only EOIR [Executive Office for Immigration Review] can provide a bond hearing. That said, if ordered, ICE would do what is in its power to facilitate a hearing." Doc. 9 at 17.

The Court is not persuaded by the Federal Respondents' contention that an order directing a bond hearing would be the appropriate relief. First, the Federal Respondents had ample opportunity to argue that Orozco Torres is or would be subject to detention under § 1226, but they failed to do so. Without any lawful basis for his detention at this time, the Court can only find that Orozco Torres is entitled to immediate release. See, e.g., Rivero v. Mina, - - - F. Supp. 3d - - -, 2026 WL 199319, at *4 (M.D. Fla. Jan. 26, 2026); Bethancourt Soto v. Soto, 807 F. Supp. 3d 397, 410 (D.N.J. 2025).

Second, the Federal Respondents' representation that they will attempt to "facilitate" a bond hearing is belied by the record.  An immigration judge has already refused to conduct a meaningful bond hearing, citing Matter of Yajure

Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025).  Thus, sending it back to the immigration judge would be futile, Orozco Torres would receive no relief at all, and the writ of habeas corpus issued in this case would be rendered entirely meaningless. Therefore, in these circumstances, the Court finds the only appropriate relief is release from detention.

## V. Conclusion

Based on the above, the Court finds Orozco Torres is entitled to immediate release because he is not properly detained under § 1225(b)(2). Since the Court will grant the Petition on this basis, it does not, and need not, address Orozco Torres's other claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").[4]

Accordingly, it is **ORDERED**:

1.      Orozco Torres's Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Orozco Torres **within 48 hours of the entry of this Order.**  At least five (5) hours before releasing Petitioner,

---

[4] The Court specifically does not address whether Petitioner has an alternative and independent due process claim.

16

Respondents shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

2.    Upon Orozco Torres's release from ICE custody, the Court's Temporary Restraining Order (Doc. 8) shall expire.

3.    The **Clerk** is directed to terminate any other pending motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of April, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

s
copies:

Counsel of Record

Felix Sebastian Orozco Torres
A# 244 251 278